J-S03033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: D.D.J.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.C.J., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1108 WDA 2024 |

Appeal from the Decree Entered August 14, 2024
In the Court of Common Pleas of Erie County Orphans' Court at No(s): 1
in Adoption 2024

BEFORE: KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY BECK, J.:                  **FILED: February 11, 2025**

D.C.J. ("Mother") appeals from the decree entered by the Erie County Orphans' Court ("orphans' court") involuntarily terminating her parental rights to D.D.J.J. ("Child"), born in April 2022, pursuant to 23 Pa.C.S. §§ 2511(a)(5), (8), and (b).[1]  Mother's counsel, Attorney Kenneth A. Bickel ("Attorney Bickel"), has filed a petition to withdraw and brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  After review, we grant Attorney Bickel's petition to withdraw and affirm the termination decree.

---

[1] In a separate decree, the orphans' court terminated the parental rights of Child's father, M.L. ("Father").  Father has not filed an appeal from that decision.

The Erie County Office of Children and Youth ("Agency") became aware of Child on June 29, 2022, after receiving a report that Mother had a mental health crisis and was being transported to a hospital for evaluation. The Agency obtained an order to obtain custody of Child. Subsequently, Child was placed back in Mother's care. On July 17, 2022, the Agency received a report that Mother had barricaded herself in the attic of a friend's home with Child. The police entered the home through a window and arrested Mother. The Agency obtained a verbal order for protection to again take custody of Child. Child was placed with her paternal grandmother, R.L. ("Grandmother").

On July 20, 2022, the Agency filed a dependency petition for Child. The dependency court found Child to be dependent on August 4, 2022. Immediately thereafter, the orphans' court ordered a treatment plan for Mother, which included, inter alia, participating in a mental health evaluation, demonstrating mental health stability, participating in a drug and alcohol evaluation, obtaining stable housing, obtaining employment, and participating in an approved parenting program.

At the first permanency review hearing on November 16, 2022, Mother was in prison. Because of her incarceration, Mother was found to be minimally compliant with the treatment plan. The dependency court directed Mother to utilize available services while she was incarcerated. Mother's minimal compliance and the need for permanency for Child prompted the dependency court to impose concurrent goals of reunification and adoption.

The dependency court held a second permanency review hearing on February 10, 2023. At that time, Mother remained incarcerated, had been placed in restricted housing, and had made no progress with the treatment plan. Mother attended the third permanency review hearing on May 17, 2023, having been released from prison in April 2023. Although Mother had not completed a significant amount of treatment, she exhibited motivation to work on her treatment plan and was referred to parenting classes. The dependency court found her compliance to be minimal.

The dependency court held a fourth hearing on August 2, 2023. At the hearing, the court found Mother's compliance to be moderate and noted that she had obtained a medical marijuana card to help address her mental health issues. Further, Mother began to have supervised visits with Child during this period. However, Mother did not have stable housing. The dependency court directed Mother to participate in a mental health evaluation, obtain safe and stable housing, and comply with treatment recommendations.

On November 2, 2023, the dependency court held a fifth review hearing at which the Agency indicated Mother was making progress and that she had obtained her own apartment and had a job. The Agency also noted that Mother was continuing to have supervised visits with Child. The orphans' court held a sixth review hearing on February 9, 2024, at which it found that Mother continued to have moderate progress toward her goals and was still participating in supervised visits with Child.

At the review hearing on May 10, 2024, the Agency indicated Mother had been evicted from her apartment and was residing in a U-Haul or staying with friends. Further, Mother had missed her medication management appointments for her mental health treatment. The Agency also noted that Mother had been arrested for disorderly conduct and had been incarcerated intermittently since the prior review hearing. The dependency court found Mother noncompliant with her treatment plan and changed the goal to adoption.

On May 16, 2024, the Agency filed a petition to terminate Mother's parental rights pursuant to sections 2511(a)(2), (a)(5), (a)(8) and 2511(b). The orphans' court held a hearing on August 8, 2024, at which Sara Keller ("Keller"), a caseworker at the Agency, Tara Niedergall ("Niedergall"), an employee of Erie Family Center who observed Mother's visits with Child, and Mother testified. Child was represented by guardian ad litem ("GAL") Attorney Michelle Alaskey ("Attorney Alaskey").[2] Ultimately, the orphans' court terminated Mother's parental rights under section 2511(a)(5), (8), and (b).

---

[2] Attorney Alaskey indicated on the record that because Child was not old enough to articulate a legal position, her "legal interests and best interests merge." N.T., 8/8/2024, at 95; *see also In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020) (stating that "where an orphans' court has appointed a GAL/[c]ounsel to represent both the child's best interests and legal interests, appellate courts should review sua sponte whether the orphans' court made a determination that those interests did not conflict."). Additionally, we note that because Child was just over two years old at the time of these proceedings, there is no error in this regard. *See In re T.S.*,
*(Footnote Continued Next Page)*

Mother timely appealed, and Attorney Bickel simultaneously filed a notice of his intention to withdraw pursuant to **Anders**/**Santiago**. **See** Pa.R.A.P. 1925(a)(2)(i), (c)(4).

When an **Anders**/**Santiago** brief is before this Court, we may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. **In re Adoption of B.G.S.**, 240 A.3d 658, 661 (Pa. Super. 2020); **see also In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004) (explaining that the **Anders**/**Santiago** procedure for court-appointed counsel seeking to withdraw has been extended to appeals involving termination of parental rights).

To withdraw pursuant to **Anders**, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous[.]" **In re J.D.H.**, 171 A.3d 903, 907 (Pa. Super. 2017) (citation omitted). Additionally, counsel must file an **Anders** brief that satisfies the following criteria:

> (1) provide a summary of the procedural history and facts, with citations to the record;

---

192 A.3d 1080, 1092 (Pa. 2018) (where a single attorney represented children who were two and three years old, holding that "if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) . . . is satisfied where the court has appointed an attorney-guardian ad litem who represents the child's best interests during such proceedings").

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**B.G.S.**, 240 A.3d at 661 (quoting **Santiago**, 978 A.2d at 361).

Finally, counsel also must provide a copy of the **Anders** brief to the client, along with a letter that advises the client of the immediate right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the **Anders** brief." **In re X.J.**, 105 A.3d 1, 4 (Pa. Super. 2014) (citation and brackets omitted).

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Id.** (citation omitted). Our independent review is not limited to the issues that counsel discussed in the **Anders** brief, but extends to "additional, non-frivolous issues" that counsel may have overlooked. **J.D.H.**, 171 A.3d at 908 (citation omitted). An appeal is frivolous when it "lacks any basis in law or fact." **Santiago**, 978 A.2d at 356 (citation omitted).

We conclude that Attorney Bickel's petition to withdraw and **Anders** brief comply with the requirements outlined above. Attorney Bickel has filed

a petition with this Court stating that after reviewing the record, he finds this appeal to be wholly frivolous. *See* Petition for Leave to Withdraw as Counsel, 11/14/2024. Further, Attorney Bickel attached to his petition to withdraw the letter he sent to Mother, which enclosed the petition and *Anders* brief. *See* Letter, 11/14/2024. Attorney Bickel's letter advised Mother of her right to proceed pro se or with private counsel, and to raise any additional issues that she deems worthy of this Court's consideration. *Id.* In conformance with *Santiago*, Attorney Bickel's brief includes summaries of the facts and procedural history of the case and discusses the issues he believes might arguably support Mother's appeal. *See* Mother's Brief at 5-21. Attorney Bickel's brief further sets forth his conclusion that the appeal is frivolous and includes discussion and citations to the record in support of his conclusion. *Id.* at 21-24. Because Attorney Bickel has complied with the technical and procedural requirements for withdrawing from representation, we turn our attention to the issues raised in the *Anders* brief:

1. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S.[] § 2511(a)(5), (8)[?]

2. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S. § 2511(b)[?]

Mother's Brief at 5 (some capitalization omitted).[3]

In reviewing an appeal from an order terminating parental rights, we

adhere to the following standard:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the [orphans'] court if they are supported by the record, but it does not require the appellate court to accept the [orphans'] court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the [orphans'] court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the [orphans'] court's decision, the decree must stand. We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the [orphans'] court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358-59 (Pa. 2021) (quotation marks,

brackets, and citations omitted).

Termination of parental rights is governed by 23 Pa.C.S. § 2511, which

requires a bifurcated analysis. *See C.M.*, 255 A.3d at 359. "Initially, the

focus is on the conduct of the parent. The party seeking termination must

---

[3] Mother has not made any additional filings in this matter either pro se or through privately retained counsel.

prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." *In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted). If the orphans' court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, the court then must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Matter of Adoption of L.C.J.W.*, 311 A.3d 41, 48-49 (Pa. Super. 2024) (citation omitted).

As stated above, the orphans' court terminated Mother's rights to Child pursuant to section 2511(a)(5) and (8). This Court may affirm the [orphans'] court's decision regarding the termination of parental rights with regard to any one subsection of [s]ection 2511(a)." *In re J.F.M.*, 71 A.3d 989, 992 (Pa. Super. 2013). We focus our analysis on section 2511(a)(8).

Mother argues that the trial court erred when it terminated her parental rights pursuant to section 2511(a)(8). Mother's Brief at 18. Mother claims that there were times when she was in moderate compliance with her treatment plan. *Id.* She further contends that her visits with Child were positive. *Id.* at 18-19. Acknowledging that her mental health was one the issues that triggered removal of Child, Mother notes that she suffered setbacks

related to her medication because of her incarceration but asserts that she successfully attended mental health therapy appointments. *Id.* at 19. Mother also argues that she followed the recommendations following her mental health evaluation. *Id.* Mother additionally highlights that she had a stable living situation in August 2023. *Id.*

To terminate parental rights under subsection (a)(8), the petitioner is required to establish three elements:

> (1) that the child has been removed from the care of the parent for at least twelve months; (2) that the conditions which led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child.

*L.C.J.W.*, 311 A.3d at 49 (citation omitted); *see also* 23 Pa.C.S. § 2511(a)(8).

Section 2511(a)(8) "does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the children." *L.C.J.W.*, 311 A.3d at 49 (citation omitted). Instead, the "relevant inquiry regarding the second prong of [section] 2511(a)(8) is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *Id.* (citation omitted).

Our review of the record supports the trial court's conclusion that Child has been removed from Mother's care for more than the requisite twelve months. The record reflects that Child had been in placement for over two

- 10 -

years at the time of termination—the trial court removed Child from Mother's care in July 2022, when she was about three months old.

The record also supports the trial court's finding that Mother has not remedied the conditions that led to Child's placement.

Keller indicated the Agency's main concerns for Mother were her mental health, housing stability, unemployment, and ongoing criminal cases. N.T., 8/8/2024, at 8. She stated that Mother was incarcerated from the time of the July 2022 incident through the permanency hearing in February 2023, and had spent a significant amount of time in restriction in prison. *Id.* at 9-11; *see also id.* at 25 (noting that Mother was incarcerated for the first nine months after Child was removed from her care). Keller indicated Mother had not made any progress on her treatment goals during this incarceration. *Id.* at 11.

Mother contacted the Agency upon her release from prison about her treatment plan and had supervised visits with Child. *Id.* at 13, 14, 30-31, 35. Mother lived with her paramour at this time; however, he was uncooperative with the Agency so the Agency could not enter the home or observe Mother's living conditions. *Id.* at 15.

Keller noted that Mother was diagnosed with bipolar disorder, ADHD, and borderline personality disorder. *Id.* at 14, 28. She testified that only three to four months of the twenty-five months Child has been in care, Mother presented as "more mentally stable." *Id.* at 36.

- 11 -

Keller testified that as of August 2023 and February 2024, Mother had made moderate progress. *Id.* at 17-19; *see also id.* at 30 (noting Mother participated in services but was unsuccessfully discharged due to her incarceration). Keller also noted that Mother had anger issues, and had completed a class, but continued to exhibit aggressive and angry behaviors. *Id.* at 34-35. As of the May 2024 review hearing, however, evidence was presented that Mother had been evicted from her residence, was living in a U-Haul moving van, was unemployed, and had missed her medication management appointment. *Id.* at 20. Keller opined that Mother had not made any progress on her treatment plan and has not visited Child since March 2024. *Id.* at 21. Keller also noted that Mother had not taken Child to any appointments, including her weekly behavioral therapy. *Id.* at 24.

Niedergall testified that she observed visits between Mother and Child, and that Mother and Child had a great connection. *Id.* at 42, 49; *see also id.* at 6, Agency Ex. 12 (Fostering Family visit notes). Niedergall indicated Mother was affectionate with Child and engaged in activities with Child. *Id.* at 42-43. Niedergall stated, however, that Mother would sometimes get "triggered," and would start "reeling." *Id.* at 43; *see also id.* at 50-51. She indicated that Mother yelled at staff and Child would then avoid Mother after these incidents. *Id.* at 44, 46, 52. In Niedergall's view, these incidents had a negative effect on Child. *Id.* at 53. Niedergall testified that Child had been in care for over twenty-five months, but Mother's visits had not advanced to

overnight visits during this time. *Id.* at 47. She had continuing concerns about Mother's ability to parent based on her mental health issues. *Id.* at 47-48.

In her testimony, Mother acknowledged that Child was placed in the Agency's care after she had barricaded herself and Child in a house. *Id.* at 55-56. Mother noted that she was arrested and subsequently incarcerated on various convictions, including criminal mischief, disorderly conduct, trespassing, burglary, and child endangerment. *Id.* at 56. She admitted that she was unable to complete any programs while she was incarcerated. *Id.* at 57-58; *see also id.* at 59 (noting as part of her probation, she completed an anger management class). She stated, though, that she underwent a psychological evaluation by Dr. Peter von Korff, who recommended weekly therapy and medication, with which she complied. *Id.* at 61, 62-65; *see also id.* at 6, Agency Ex. 11. Mother stated she continued the weekly appointments until she was incarcerated in March 2024. *Id.* at 65, 76.

Mother testified that her visits with Child went well and that she and Child "bonded very well." *Id.* at 66. She admitted that when she would escalate situations, Child would "do her own thing," and Child would reengage with her afterwards. *Id.* at 69, 70; *see also id.* at 68-69, 81 (noting that she is a very passionate person and would raise her voice).

Mother noted she previously had an apartment but was unable to maintain the housing due to a physical altercation with a neighbor. *Id.* at 70-

71. She disputed that she was living in the U-Haul, stating instead that she was living with friends. *Id.* at 71. Mother also admitted she was unable to finish a parenting class. *Id.* at 73. Mother stated that she had employment but lost her job when she went to prison. *Id.* at 74; *see also id.* at 75 (noting she was incarcerated between March and July 2024). Mother believed that she was offered enough mental health services to deal with her mental health. *Id.* at 79.

Thus, at the time of the termination hearing, the witness testimony, including that presented by Mother, reflects that she did not complete the objectives in the treatment plan and concerns remained about her ability to parent Child, her mental health, her repeated incarcerations, and her housing instability. Notably, although Mother's visits with Child reportedly went well, her visits have never progressed beyond supervised visits. We therefore agree with Attorney Bickel that any claim that the orphans' court erred or abused its discretion as to the consideration of these factors under section 2511(a)(8) is frivolous.

Turning to the needs and welfare analysis required under subsections (a)(8) and (b),[4] Mother argues that the trial court erred because the Agency

---

[4] Although separately enumerated, this Court has interpreted the needs and welfare analyses required under subsections (a)(8) and (b) to utilize the same legal standards and to be based upon the same evidence. *See Matter of Adoption of M.A.B.*, 166 A.3d 434, 448 (Pa. Super. 2017) (combining discussion of the children's needs and welfare pursuant to subsection (a)(8)
*(Footnote Continued Next Page)*

failed to produce sufficient evidence that she did not have a bond with Child. Mother's Brief at 20. Mother points out that testimony established she was "very present" during interactions with Child and they had a "very great connection." *Id.* (citations omitted). Mother also contends that her own testimony established she was bonded with and loved Child. *Id.* at 20-21.

Section 2511(b) provides:

The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

Our analysis focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *T.S.M.*, 71 A.3d at 267. "[T]he determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." *Id.* (quotation marks omitted). It is not enough that there exists a bond between parent and child

_____

and subsection (b) because the "third element of [s]ection 2511(a)(8) requires that the [o]rphans' [c]ourt conduct an analysis similar to that required under [s]ection 2511(b)").

- 15 -

to avoid termination. ***See Interest of K.T.***, 296 A.3d 1085, 1109 (Pa. 2023). Rather, the trial court must determine whether the bond is "necessary and beneficial" to the child, such that "maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." ***Id.*** at 1105-06. Focusing upon the "child's development, and mental and emotional health," the trial court should assess whether severing the bond "is the kind of loss that would predictably cause extreme emotional consequences or significant, irreparable harm" to the child. ***Id.*** at 1110-11.

Additionally, "the parental bond is but one part of the overall subsection (b) analysis[.]" ***Id.*** at 1113. The needs and welfare analysis must also include the consideration of factors such as: "the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." ***Id.*** (citations omitted). "These factors and others properly guide the court's analysis of the child's welfare and all [their] developmental, physical, and emotional needs." ***Id.*** Importantly, "[orphans'] courts have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." ***Id.***

Here, Keller testified that Child's needs and welfare are best served by terminating Mother's parental rights. N.T., 8/8/2024, at 21. Keller agreed

that Mother had positive interactions with Child, but Mother had not seen Child since March 2024. *Id.* at 30. Child recognizes Grandmother as her primary caregiver and was thriving in her care. *Id.* Child has positive and loving interactions, Child's needs are met, and Child is stable. *Id.* at 21-22. Keller noted that Grandmother "goes above and beyond to meet the needs" of Child, including working with a therapist, taking Child on outings, and involving her in their religious culture. *Id.* at 24. Keller stated that Child refers to Grandmother as "grandma or mama." *Id.* at 38. Keller stated that there was no reason not to proceed with adoption. *Id.* at 22.

Based on the record before us and the standard of review we must employ, there can be no abuse of discretion in the court's needs and welfare decision under section (a)(8) and (b). The orphans' court found, based on the unrefuted evidence, that Child is bonded with Grandmother, that she meets Child's needs and provides for her emotional, medical, and physical welfare, and Child will not be irreparably harmed by terminating Mother's parental rights. Although Mother loves Child, it is well settled that a parent's own feelings of love are not sufficient to show that termination would not best serve the child's needs and welfare. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010); *see also Interest of M.E.*, 283 A.3d 820, 839 (Pa. Super. 2022) (noting that orphans' court does not have to consider the bond between parent and child "over all other needs and welfare considerations"). Indeed, the record does not reflect that Mother had any significant history of serving

in a caregiving role for Child or meeting Child's developmental needs. ***See In re P.Z.***, 113 A.3d 840, 852 (Pa. 2015) (finding termination of parental rights supported under 2511(a)(8) and (b) where child was familiar with parent, but no attachment existed and parent did not have a history of engaging in a caregiving relationship with child or taking responsibility for child over an extended period).

Child looks to Grandmother to meet her needs and welfare. ***See Interest of M.E.***, 283 A.3d at 839 (noting that the orphans' court should instead "weigh any pain from breaking the bond against other considerations as to what result serves the child's needs and welfare"). Child is bonded with Grandmother, and Grandmother wishes to adopt Child.

Accordingly, we conclude that the orphans' court did not err or abuse its discretion in determining that Child's developmental, emotional, and physical needs and welfare are best met by terminating Mother's parental rights. We agree with Attorney Bickel that any contrary claim is frivolous.

Our independent review of the record has disclosed no non-frivolous issues overlooked by Attorney Bickel. ***See J.D.H.***, 171 A.3d at 908. Therefore, we grant Attorney Bickel's petition to withdraw from representation and affirm the decree terminating Mother's parental rights to Child pursuant to section 2511(a)(8) and (b).

Petition to withdraw granted. Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

2/11/2025